Good morning. Good morning, Ms. Renfro. Yes, may it please the court, I'm Kristen Renfro appearing today on behalf of Thomas Gearing and Daniel Gearing. Want to try to save any time, just as an estimate? I'm gonna shoot for four minutes. Okay, very well. And I'll keep an eye on the clock, thank you. In Nick versus Township of Scott, Pennsylvania, the Supreme Court stated very clearly that the Civil Rights Act guarantees a federal forum for claims of unconstitutional treatment at the hands of state officials. The court reaffirmed that in the Pactel case. Had it not been clear in Nick, the Supreme Court made sure that we got the message. Okay, but let me ask you this. Those cases addressed ripeness, not abstention, and that's what we're talking about here. Why should the apply in this case? Well, Your Honor, both the ripeness doctrine and the abstention doctrine are prudential doctrines. They're not jurisdictional. They serve important functions for the judiciary, but they must yield to the constitutional rights and the rights under the Civil Rights Act of litigants who present takings and other claims there under. With respect, I, um, you courts that arguably in both cases would apply constitutional principles. And the question is, which is the better court to decide which? And what you're saying, if I understand correctly, is that based on Nick and Pactel, we've got to leave this in the federal court while this other one is proceeding. There are a lot of reasons why that doesn't make any sense, which I'd like you to tell me why that's wrong. In other words, this is an abstention. It's an abstention to try to part of comedy, if you will, to make this work. We don't want to have duplicate duplicative situation. What? What's what's the good argument on your part to deal with the abstention issue? Yes, Your Honor. Well, in this case, the prior taking alleged the regulatory taking alleged to have occurred predated the institution of the eminent domain proceeding in state court and the city's election to go forward there in the question. And so my clients have a claim from the moment that taking occurs. It has accrued in order to value my client's properties in the eminent domain action, whether or not the action of the city constitutes a regular regulatory taking must be determined. But it can be. Can it not? I mean, again, eminent domain in under the Constitution, you're supposed to get be justly compensated for the fair value of what you are losing. That would include, in my judgment, the very same things that you want to litigate in the federal court. In what way are you prejudiced if the state court handles the eminent domain action and values the property, including the damages that you suffered by the earlier taking as you view it? Well, my clients are denied the federal forum, Your Honor. And we cited the court. Did you make an England reservation? I'm sorry. Wasn't there an England reservation? Yes, Your Honor. But we know from the San Remo case that the England reservation will do nothing once these issues are addressed. There will be issue preclusion. There will be claim preclusion. We cited the court, the case of Dodd, where this court recognized even prior to Nick that it was not fair to require litigants to go and adjudicate their Fifth Amendment takings claims in state court prior to coming to federal court. There is a reason why litigants come to the federal court. There are perceived advantages to both parties to be in one forum or the other. There's a reason why the city wants to be in the state court, where it finds the law more familiar, where potentially my clients will not have a right to a jury trial on the issue of liability, and where it is possible that procedurally, if the takings claim is resolved as part of the valuation process, my clients risk not being able to recover expenses of the litigation that Congress has provided they should be entitled to for the vindication of their constitutional right. So those are important substantive consequences, prejudice to my clients, that will be unavoidable if we proceed in the state court action. The valuation issues is the application of the Senate Bill 330 and whether that would benefit your client, and that's really a state court issue that has to be resolved. Well, Your Honor, the SB 330 issue is really a red herring. It has nothing to do with the substance of my client's claim, which is that my client submitted an application to build on their properties. They were denied not because the city construed SB 330 in some manner, but because the city had its own land use rule that said, if you want to develop any parcels in the west of railroad area, you have to do, there has to be a specific plan adopted for the entire area, 130 or so separate legal parcels. It was the city's interpretation and application of its own land use regulation that was the basis for refusing to consider and to process our application. So it didn't implicate... that I could have built under SB 330. That was the controlling law, and the property, therefore, should be valued higher. Well, I don't know that my client is going to argue that SB 330 required the city to allow them to build. It may be true that SB 330 required the city to give us a process and allow us to proceed with our application, and that we had a protected interest for purposes of some other issues to do with our substantive due process claims and the like, but we're not claiming that SB 330 required them to allow us to build, and we were denied on that basis. So it's been this red herring in the case, and it really wasn't a supportable basis for the federal court to find abstention appropriate in this case. What seemed to be the reason, ultimately, why the district court found abstention appropriate was this idea that, you know, no harm, no foul. Go to state court, as the court has brought up, and just have the issue resolved there. Isn't it efficient? Well, the same could be said that the city, once it knew that my clients were alleging these constitutional violations, that it was going to file a lawsuit, because it told them, told the city that they would, and then did that, the city, if it chose to pursue the eminent domain action in any event, could have filed that as a cross-claim in the federal action then pending. The federal court could have heard that claim. The federal courts hear eminent domain cases on diversity jurisdiction with some And so, if we're talking about what would have been the most efficient way, you know, to the extent that's an appropriate consideration, there was a way, and a way that respected my clients' rights to be in the federal forum. So, is it your position that if a federal complaint is filed first, that it just, if so fact, that the Tibiddo takes precedent over any later filed eminent domain action filed in state court? Well, I think that's true, Your Honor. I think that there could be instances in which maybe there genuinely is some state law issue that's at play, and I think in some of the cases like the Tibiddo, I don't know if I'm pronouncing that correctly, but the Tibiddo case that has been cited by the city as, you know, eminent domain cases should be sort of treated differently. Well, all those cases, there were issues of interpretation of state law, and in that case, interpretation of the eminent domain law of the state itself that were in dispute. With respect to it, don't you have section 9.3.5 versus SB 330 that are not clear? You've got a conflict there, and so those are state law issues. Wouldn't that argue in favor of allowing this state eminent domain action to proceed? Well, I don't think that my clients required SB 330 to maintain their challenge to 9.3.5. I think in the absence of SB 330, it would be our position, it is our position, that the regulation of the city 9.3.5 is unconstitutional, and so I don't think that we ever get to that conflict because my clients independently had that right. But so ultimately, I think the district court misunderstood or believed that the England reservation would be a sufficient safeguard for us, and it really won't be. The valuation process that will occur in the eminent domain action will necessarily result in the resolution of our federal claims. Has to. We know it's a foregone conclusion, and so we think it appropriate that this court look to what the Supreme Court said in Nick, why it said it. The fact that what it was displacing was the state litigation rule, not the not the basis for the rule, because I think the court said it was really a rule in search of a justification. Wasn't the justification. It's the consequence of rule. Um, that we're asking this court to ensure that, um, the same functional rule is not put right back in place. Let me let me ask you this. Uh, just argue window. If I say that I think all three elements of Pullman are satisfied here, you say that Nick and Pactel govern this. It changes it. If it doesn't, what's your best argument that Pullman doesn't control in any event? So, Your Honor, if the assumption is that the traditional requirements would otherwise be met. Yeah. In other words, as I look at it, let's say Nick wasn't there and Pullman wasn't. I mean, and Pactel wasn't there. Looks to me like Pullman's satisfied. But if if you don't have Nick and you don't have Pactel, what's your best argument that Pullman isn't satisfied in any event? Well, I think you still have the persuasive rationale of the Supreme Court that that resulted in those opinions, right? Barring the Supreme Court already having said what it said, it would still be a great reason not to require my clients to go to state court to litigate their federal claim. We know they're gonna get where there's already been, and we did a request for judicial notice to advise the court. There's already been a legal issues motion under a state procedure wherein the city has attempted directly to resolve the Fifth Amendment takings issue, um, for the purpose of ensuring that the appraisers would have to consider the regulation. So we already know that that's the foregone conclusion and that it's not the right result. Got it. You want to say the rest of you? I do. Thank you, Your Honor. Very well. Okay, so Mr Zinn. Good morning, Your Honors. Matthew Zinn, appearing on behalf of the City of Half Moon Bay. I'm grateful for the privilege to be able to be arguing in the courtroom again, particularly on land use day here. I've been enjoying the prior arguments. May it please the Court, Your Honors. In seeking to overturn the District Court's abstention order, plaintiffs put primary reliance on a case that, by their own admission, didn't involve abstention, primarily Nick to a case. Nick overruled Williamson County's requirement that takings claimants file an inverse condemnation action under State law in State court. That has nothing to do with what happened here. If the District Court in this case had directed plaintiffs to go to State court to file a State inverse condemnation action, their argument might have some weight that that kind of an application of abstention is no longer valid after Nick. And, candidly, there are some older cases in which some District Courts, it appears, did that. But that's not what happened here. In this case, the District Court did not direct plaintiffs to litigate their State inverse condemnation claim or their Federal claims in the State proceeding. And, in fact, they are not compelled to litigate their Federal claims in the State proceeding. They don't cite a single case that indicates that they're required to do so. Let me ask you this, Counsel. I think probably one of the most troubling points brought up by Ms. Renfro is the idea that there's no jury trial available in the State court proceeding. And she suggests that the City of Half Moon Bay could have simply filed a counterclaim in the for eminent domain and everybody would have gotten what they wanted. What's your response to that? Well, several responses, Your Honor. The first is that they have no Seventh Amendment right to a jury trial on the kind of takings claim that they have asserted here. The Court has not held that the Seventh Amendment applies to a Penn Central type taking. And this Court, I believe in the Buckles case, I think it was indicated, stated, that the Seventh Amendment does not apply to all takings claims. So that would be my first response. The second response is, again, as Your Honor pointed out, that the England Reservation serves the purpose of allowing plaintiffs to return to Federal court to litigate their Federal claims. And the City has reiterated this again and again in the State court proceedings and has only raised the Federal claims in the State court proceedings because plaintiffs have asserted in the State court proceedings both their Federal causes of action and an England Reservation, which the Superior Court, in one of the orders provided in plaintiff's RJN, called having their trying to have their cake and eat it, too. And certainly, they can't do that. But the City agrees. England applies here. They can reserve their Federal claims and then they can come back to Federal court. In other words, they weren't, from your perspective, with that reservation, they could have gone to Federal court to get whatever they were missing in the State court, effectively. Is that right? Yes. However, I need to be candid that it is possible that issue preclusion can apply, as this Court has previously recognized and San Remo Court as well. So that is a possibility. But because that is, you don't get two bites at the apple. If a State court actually decides a particular issue, then that issue cannot be relitigated. But their Federal claims, claim preclusion does not apply full stop because of England. Of course, if they do litigate their Federal claims in State court, then they cannot come back and relitigate them here. Going to Your Honor's point about prejudice, there's no prayer for equitable or prospective relief in this case. This case is about money. And plaintiffs can be fully compensated after the fact for any delay in reaching their Federal claims. They have no absolute right to have everything decided in Federal court. Um, that, uh, State courts are perfectly competent to adjudicate constitutional claims. Again, if they decide to raise them, they're not obligated to do so. Um, aside from the jury trial issue, which you've already addressed, what else, besides just being in a different forum and different rules, is different in your view between Federal court and State court? In If there's no abstention here, what are they being deprived of? If there's no abstention, there's no abstention. So if they proceed in the State court eminent domain, in what way are they harmed? In what way are the plaintiffs harmed? I don't think. I don't think they are. Yeah, no, I don't believe so at all. And in fact, um, you know, the State court has, as the abstention doctrine and its principles of underlying principles of comedy recognize, State courts have some expertise in State law, the law of eminent domain and the laws of that apply to local land use regulation, which, of course, this court has repeatedly identified as sensitive issues of State policy for purposes of Pullman. And I do want to get to the question of what are the uncertain questions of State law here, because that seems to be in terms of the application of Pullman. Plaintiffs have asserted previously that SB 330 precludes the city's specific plan requirement. And SB 330 is a new statute. It has never been construed by a State court. It is, therefore, it presents uncertain questions of State law. The plaintiffs have, of course, some rights to build in conformance with regulations in place at the time that they submit a complete application. Their construction of SB 330, and I acknowledge counsel's point that the plaintiffs have other arguments about the invalidity, alleged invalidity of the specific plan requirement. But one of their arguments has been that it is inconsistent with SB 330. And as a result, the State court should be given an opportunity to construe SB 330 in that context. I would also point out that no court has construed the specific plan requirement in the city's land use plan. And so the meaning of the specific plan that is required has not yet been evaluated, has not been decided by a State court. And that the question is, should a Federal court even have jurisdiction to hear that argument? I don't know. I guess it would depend on the posture in which it's presented. I mean, they're actually, I'm sorry, let me back up. It's essential to their constitutional claims that the specific plan requirement imposes such a severe burden on them that it affects the taking of their property, the regular transaction. And so then that would be the Federal claim. Exactly. Exactly right, Your Honor. And so that is an additional issue of State land use law that hasn't been construed by a State court. Unless Your Honors have further questions, I don't feel the need to take up the rest of my time. Do either of my colleagues have additional questions? I don't know land use law as well as my colleague does. You were talking in your brief about the difference between the permanent taking and this temporary taking and what goes to State court and Federal court. Could you just clarify that in maybe plainer language for me? Yes. I mean, the rationale for the application of Pullman here is, right, that the exercise of the power, the affirmative exercise of the power of eminent domain, in that exercise the City concedes liability for a taking. So there will be a taking. And it will occur at the point of the eminent domain action. Their argument is about an alleged prior regulatory taking that they claim was affected by the application of the regulation to them. Absent the eminent domain action, that is a claim for a permanent taking. And so our point is that the eminent domain action will cut off that alleged prior taking and convert it into at most a temporary taking. Of course, the City vigorously contests their contention that there has been a regulatory taking here. And the temporary taking would be the regulatory taking, whereas the eminent domain would be the permanent taking. Correct. The eminent domain action will transfer title to the City. Regulatory taking has not transferred title. Plaintiffs still hold title. They can sell their property and so forth. Very well. All right. So, Ms. Renfro, you have some rebuttal time. Yes. Thank you, Your Honor. To address the jury trial issue, I would cite the court Del Monte Dunes, wherein the court held that you are entitled to a jury trial when the issue is the Lucas theory about the loss of all economically or substantially all economic value in the property. Lucas claim is probably, you know, one of our stronger positions going forward on the merits of the case. And so that's what we'd be dealing with. I think it's pretty clear from the Del Monte Dunes case that we are entitled to the jury trial. And what case would you cite to that effect? Lucas? Well, Del Monte Dunes is the case in which the court recognized the Seventh Amendment right. I think, I'm sorry, Your Honor, I don't have the full cite right in front of me, but I know it is in our brief. That's all right. What's the full name? Yeah. Del Monte Dunes versus, I don't recall if it was the County of Monterey, the City of Monterey. But it is cited, I know, in our brief in full. So the Seventh Amendment right, at least in the context of a Lucas claim, has been definitively found. And, you know, in terms of the counsel's reference to the fact that we've raised directly the federal claims in the state court action, we don't want to be in state court. But for the time being, unless this court rules otherwise, that's where we are. And knowing that issue preclusion is a certainty, and trying our best to, you know, to react to the circumstance and preserve as many of our rights as possible, it only made sense to, at once, make the England reservation, but still assert the claims and the pleadings. So, notwithstanding what your opposing counsel says about the Seventh Amendment not really applying here, you're saying that case law makes clear that had, well, if you were able to continue in federal court, that you can ask for a jury to try the eminent domain action to the degree that it's tried there. Is that right? Yeah. The liability issue as well as the compensation issue, which in state court, the liability issue, we would not have that right on an inverse claim in state court. The other issue of potential harm your Honor was asking my opposing counsel about, the other issue is that the eminent domain action can be abandoned at any time by the city. We could go through the entire exercise of having the matter tried to a jury, get a slam dunk outcome where we show that, hey, the regulation should be disregarded, have a great day, and it's all for naught because the city determines that in that instance it's going to abandon. We end up right back where we were. If there's an abstention, if they get to a jury, they've conceded that it's taken. It's just a question of value. You could have issue preclusion and move them the other way or to the federal court, could you not? Well, I suppose. Once the abstention's over? I suppose, yes. We could find ourselves with the advantage of having the issue preclusion in our favor. That's a potential outcome. We still would have to go back to the federal court. It's just the process. Longer, more expensive, unduly burdensome to my clients and to other similarly situated property owners in that position. Thank you, Your Honors. Do either of my colleagues have additional questions of Ms. Renfro? All right. Thank you so much. Thanks, both, for a very helpful argument. Thanks to everybody who argued today. The arguments have been very helpful. The case just argued is submitted, and the Court stands adjourned for the day. Thank you. Thank you.
judges: THOMAS, SMITH, McShane